# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re: | |
| | Case No. 18-14781 MER |
| 1075 S YUKON, LLC, | |
| | |
| Debtor. | Chapter 11 |

## ORDER

THIS MATTER comes before the Court on the Combined Motion to Approve: (1) Debtor's Purchase and Sale Agreement for the Commercial Real Estate Located at 1075 S. Yukon St. (Repurchase) as Amended; and (2) Postpetition Loans ("**Motion**").[1]  The Court, having reviewed the parties' filings and considered the parties' arguments made before it at the July 25, 2018 hearing on this matter, orders as follows.

## BACKGROUND

There is no dispute concerning the parties' relationship prior to this bankruptcy case or with respect to the essential terms of the contract at issue.  On or about February 14, 2018, the Debtor sold real property located at 1075 South Yukon Street, Lakewood, Colorado 80226 ("**Property**") to Corporate Properties, Inc. ("**CPI**") for $1,400,000.  The Property is approximately located at the corner of Wadsworth Boulevard and Mississippi Avenue and consists of three floors of commercial office space.  That same day, the Debtor and CPI entered into a second agreement that, generally, gave the Debtor an option to repurchase the Property from CPI if certain conditions were met ("**Repurchase Agreement**").

On the date the Debtor's option under the Repurchase Agreement was set to expire, the Debtor, CPI and a third-party assignee of the purchase option entered into an amended Repurchase Agreement ("**Amended Agreement**") extending the deadline for the Debtor, or the third-party assignee, to purchase the Property from CPI.[2]  The Amended Agreement specifies the new option deadline as follows:

---

[1] ECF No. 38.  The Debtor filed identical motions at docket numbers 37 and 38.

[2] A copy of the Amended Agreement is attached as an exhibit to the Debtor's Motion.

Sale of Property

(a)    If Closing occurs on or before 5:00 p.m. Mountain Standard Time ("MST") on May 22, 2018, Seller agrees to sell the Property to Buyer for payment at Closing, via wire transfer or cashier check (at Seller's election) of One Million Six Hundred and Eighty-Seven Thousand Dollars and zero cents ($1,687,000);

(b)    If Closing occurs any time after 5:00 p.m. MST on May 22, 2018, and before 5:00 p.m. MST on May 31, 2018, Seller agrees to sell the Property to Buyer for payment at Closing, via wire transfer or cashier check (at Seller's election) of One Million Seven Hundred Fifty Thousand Dollars and zero cents ($1,750,000).

The Amended Agreement also expressly provides for automatic termination of the Debtor's right to purchase the Property if the closing does not occur on or before 5:00 p.m. MST on May 31, 2018.  The Amended Agreement left unchanged the Repurchase Agreement's time-of-the-essence provision. Again, the terms of the Amended Agreement are not in dispute.

The Debtor admits it was unable to obtain financing to purchase the Property by the deadline of 5:00 p.m. MST on May 31, 2018.  The Debtor filed its voluntary Chapter 11 bankruptcy petition at approximately 4:00 p.m. on May 31, 2018.

The Motion, filed 43 days after the petition date and the May 31, 2018 deadline, seeks the Court's approval to purchase the Property pursuant to the Amended Agreement and compel CPI to sell the Property to the Debtor for the $1,750,000 option price.[3]  To accomplish the purchase, the Debtor also seeks authority from the Court to borrow the total sum of $1,975,916 from two lenders whose loans will be secured by deeds of trust against the Property.[4]

Despite the timing of the Motion, the Debtor asserts it is permitted to exercise its option to purchase the Property by operation of 11 U.S.C. § 108(b),[5] which provides:

---

[3] ECF No. 38.

[4] *Id*.

[5] Unless otherwise specified, all references herein to "Section," "§" and "Code" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101, *et seq*.

(b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of--

    (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

    (2) 60 days after the order for relief.[6]

Analogizing it to an option to redeem property following a foreclosure sale, the Debtor contends the exercise of its purchase option under the Amended Agreement falls within the "any other similar act" provision within § 108(b).[7] Thus, according to the Debtor, it has an additional 60 days from the petition date, or until July 30, 2018, to exercise the option to purchase the Property for the option price of $1,750,000.[8]

CPI objects to the Debtor's attempt to purchase the Property, arguing the Debtor's use of § 108(b) to extend the purchase option deadline under the Amended Agreement is not supported by the law of this Circuit, the plain language of § 108(b) or its legislative history.[9] Further, CPI contends permitting the Debtor to modify the terms of the Amended Agreement to extend the purchase option deadline is contrary to public policy.[10]

After reviewing the parties' agreements, the case law cited by the parties in their briefs and considering the arguments made to the Court at the hearing on this matter, the Court concludes the Debtor's right to exercise the purchase option contained in the Amended Agreement was not automatically extended by operation of § 108(b).  Accordingly, because the

---

[6] 11 U.S.C. § 108(b).

[7] ECF No. 50.

[8] *Id*.

[9] ECF No. 47.

[10] *Id*.

time for the Debtor to exercise the option and purchase the Property has expired the Debtor's Motion must be denied.

## ANALYSIS

The issue presently before the Court is whether § 108(b) extends a debtor's pre-petition contractual right to exercise an option to purchase real property if the deadline to exercise the option had not expired prior to the petition date.  The parties do not cite any published decisions from this District on the issue.  The only published decisions by Courts from within this District give scant treatment to extensions of deadlines under § 108(b) and only with respect to extension of a trustee's or debtor's statutory redemption rights under Colorado law.[11]  Further, there is no precedent from the United States Court of Appeals for the Tenth Circuit addressing this specific issue.  Thus, the Court considers it a matter of first impression.

Resolution of this issue requires the Court to determine whether the Debtor's exercise of the purchase option in the Amended Agreement constitutes, under the meaning of § 108(b), "fil[ing] any pleading, demand, notice, or proof of claim or loss, cur[ing] a default, or perform[ing] any other similar act."  Exercising the purchase option contained in the Amended Agreement does not involve filing any pleading, demand, notice or proof of claim or loss, or any act "similar" to these specific acts.  In this case, other than the catch-all phrase "other similar act" contained within § 108(b) (discussed *supra*), the only possible applicable provision is the "cure of a default."  Thus, the Court must examine whether the Debtor's exercise of the purchase option fall under either of these provisions.

---

[11] *See In re Durwick, LLC*, 2012 WL 2046877, *3 (Bankr. D. Colo. June 1, 2012) (""[r]edemptive rights may be extended 'only to the extent provided in § 108.'") (quoting *In re Cucumber Creek Development, Inc.*, 33 B.R. 820 (D. Colo. 1983)); *see also In re Craddock*, 1992 WL 406934, *7 (Bankr. D. Colo. Sept. 17, 1992) (§ 108(b) "speaks only to time periods prescribed by applicable non-bankruptcy laws which 'have not expired before the date of the filing of the petition[.]"); *see also In re Thomas*, 87 B.R. 654, 655-56 (Bankr. D. Colo. 1988) (foreclosure redemption period available to the debtors was extended 60 days under § 108(b) because the debtors filed their bankruptcy petition before the redemption period expired under Colorado law); *In re Murphy*, 22 B.R. 663, 665 (Bankr. D. Colo. 1982) (only modification to length of redemption period under Colorado law is provided by § 108(b) which extends the period to 60 days after the order for relief); *see also In re Hellenschmidt*, 5 B.R. 758, 760 (Bankr. D. Colo. 1980) (§ 108(b) "automatically affords the trustee a minimum 60-day period if the redemption period remaining is shorter.").

1.   **Exercise of the Purchase Option is Not Curing a Default Under
      § 108(b).**

The Amended Agreement makes clear the Debtor and CPI expressly agreed the Amended Agreement, and thus the purchase option, would terminate, by its own terms, if the Debtor failed to close on the repurchase of the Property before 5:00 p.m. on May 31, 2018.  The lapse or termination of the Debtor's option is not due to a default or the Debtor's inability to satisfy some contractual obligation owed to CPI.  Other than termination, the Amended Agreement imposes no penalty on the Debtor for failing to exercise the option and provides no contractual avenue for the Debtor to revive the option.

There is no dispute the Debtor failed to close by the Amended Agreement's specified time and date.  Instead, the Debtor filed the instant bankruptcy case mere hours before that deadline.  In the absence of the Debtor's bankruptcy filing, there cannot be any reasonable argument the Amended Agreement would not have automatically terminated by its own terms without the necessity of any further action by CPI.  Even in the presence of the Debtor's bankruptcy case, the Amended Agreement terminated by its own terms.  The Debtor did not seek to exercise its option and force a sale of the Property until July 13, 2018, 43 days after the May 31, 2018 deadline and the petition date.

The Debtor's failure to exercise the option to purchase the Property by the deadline to do so was thus not a default under the terms of the Amended Agreement.  Rather, the Debtor's option lapsed because the Debtor chose to or was unable to exercise the purchase option.  The Amended Agreement simply terminated by its own terms.  Therefore, the Debtor's failure to timely close on the Property under the Amended Agreement is not a default whose cure period can be extended by § 108(b).  This result is made clear by the U.S. Court of Appeals for the Tenth Circuit's decision in *In re Trigg*.[12]

---

[12] *In re Trigg*, 630 F.2d 1370 (10th Cir. 1980) ("A contract that provides for termination on the default of one party may terminate under ordinary principles of contract law even if the defaulting party has filed a petition under the Bankruptcy Act . . . In the present case, the debtors failed to satisfy their contractual obligation to make the delay rental payments on their oil and gas leases. The leases lapsed by their own terms. The bankruptcy court was powerless to rewrite those terms for the parties.").  Although decided under the Bankruptcy Act, *Trigg* remains good law under the Bankruptcy Code. *See In re Margulis*, 323 B.R. 130, 134 (Bankr. S.D.N.Y. 2005).

## 2. Exercise of the Purchase Option is Not "Any Other Similar Act" Under § 108(b).

Even if § 108(b)'s extensions of deadlines to "file any pleading, demand, notice, or proof of claim or loss [or] cure a default" are not available to Debtor in this case, the question remains whether the exercise of the option within the Amended Agreement nonetheless constitutes "any similar act" under the meaning of that Code section.  Debtor's counsel conceded during oral arguments exercise of the purchase option must fall under this provision for § 108(b) to apply.

The Court recognizes other bankruptcy courts from outside this district have concluded the "any other similar act" provision allows a debtor 60-days after the order for relief to exercise an option that would otherwise have expired.[13]

In contrast, in the one instance where a bankruptcy court within this Circuit dealt with this issue, *In re Durability, Inc.*, Judge Terrence L. Michael of the U.S. Bankruptcy Court for the Northern District of Oklahoma disagreed with the broad reading of § 108(b) given by these other courts, concluding he was bound by the Tenth Circuit's *Trigg* decision.[14]

In *Durability*, the terms of an insurance policy gave the debtor a thirty-one day grace period for payment of premiums.[15] If the policy lapsed, the debtor could reinstate the policy within five years if certain conditions were met, including proof the insured was insurable at the time of

---

[13] *See In re Empire Equities Capital Corp.*, 405 B.R. 687, 692-93 (Bankr. S.D.N.Y. 2009) (concluding purchase option fell under the "other similar act" provision of § 108(b)); *see also In re Future Growth Enterprises*, 41 B.R. 469, 471 (Bankr. E.D. Pa. 1986) ("The exercise of an option falls squarely within the "paperwork" provision of § 108(b) . . . and hence, the debtor's exercise of the option was timely under § 108(b)); *see also In re G-N Partners*, 48 B.R. 462, 467 (Bankr. D. Minn. 1985) (reading "perform any other similar act" broadly to include the exercise of a purchase option to fulfill § 108(b)'s purpose of "giv[ing] a trustee at least 60 days after the filing of a case to preserve the interests of the estate by doing those things which the debtor neglected to do or was unable to do within the originally prescribed time."); *see also In re Santa Fe Development & Mortgage Corp.*, 16 B.R. 165, 168 (BAP 9th Cir. 1981) ("[W]e view the act of making a payment to extend an escrow or consummate an executory contract of sale as the performance of any other act similar to filing a demand, notice or curing a default.").

[14] *In re Durability, Inc.*, 273 B.R. 647, 662-63 n. 12 (Bankr. N.D. Okla. 2002), *reversed on other grounds*, 166 Fed. Appx. 321 (10th Cir. 2006).

[15] *Id*. at 651.

reinstatement.[16]  At the time the debtor entered bankruptcy, the insurer had an internal corporate policy of waiving the insurability requirement for seventy-five days following the last premium due date.[17]  The insurer made such an offer to the debtor, which would have allowed the debtor to reinstate the policy after the thirty-one day grace period expired prior to the debtor's bankruptcy filing.[18]  The payment was not tendered to the insurer by the date required by the offer.[19]  After the deadline given by the insurer's offer, the Chapter 7 trustee for the debtor attempted to pay all past due premiums on the policy but the insurer refused to accept the premiums or reinstate the policy unless the debtor complied with the policy's conditions for reinstatement, including providing evidence of insurability.[20]  Because the debtor failed to comply with these provisions, the insurer informed the trustee the policy had lapsed for nonpayment.[21]

The Chapter 7 trustee for the debtor argued the insurer's offer extended the time for payment of premiums to a date after the petition date and § 108(b) gave him sixty days after the petition date to pay all past due premiums thus making his post-offer deadline tender of payments timely.[22]  Although acknowledging § 108(b) has been held to allow for late payment of insurance premiums,[23] the court held § 108(b) did not apply in that case.[24]

Judge Michael concluded the insurer's offer to allow the insured to restore its policy coverage was "in effect an option contract" which could not

---

[16] *In re Durability, Inc.*, 273 B.R. at 651.

[17] *Id*. at 652.

[18] *Id*.

[19] *Id*. at 652.

[20] *Id*.

[21] *Id*. at 653.

[22] *Id*. at 660-61.

[23] *Id*. at 661 (citing *In re Econo–Therm Energy Systems Corp.,*80 B.R. 137, 141 (Bankr. D. Minn. 1987) (holding § 108(b) extends statutory and contractual term periods, and that there is no requirement to pay the premiums before the grace period expires); *also citing Counties Contracting and Constr. Co. v. Constitution Life Ins. Co.,* 855 F.2d 1054, 1059 (3rd Cir.1988) (holding that § 108(b) extends the statutory grace period for payment when the bankruptcy petition is filed before the expiration of the grace period)).

[24] *Id*. at 661-63.

be extended under § 108(b).[25]  Because no consideration was given by the debtor to keep open the insurer's offer to reinstate the policy, Judge Michael reasoned, it was a "gratuitous option."[26]  The gratuitous option was valid for the time period stated unless revoked by the optionor before accepted by the optionee.[27]  In that case, the offer extended by the insurer was not revoked by the insurer's deadline, nor was it accepted by the debtor on or before the deadline.[28]  Thus, Judge Michael concluded, it expired by its own terms.[29]

Relying on *In re Trigg*, Judge Michael held § 108(b) did not extend the option contract beyond the expiration date given by the insurer's offer.[30] Unlike the bankruptcy courts in *Empire Equities*, *Santa Fe Development*, *G-N Partners* and *Future Growth*, Judge Michael was compelled to follow the precedent established by the Tenth Circuit in *Trigg* with regard to Section 11(e) of the Bankruptcy Act of 1898, the predecessor to § 108(b), and adopt a narrow construction of § 108(b).[31]  Judge Michael was "further swayed to adopt a narrow reading of § 108(b) due to the fact that only minor differences in language exist between the two statutes."[32]

This Court is not bound by Judge Michael's decision in *Durability* any more than it is bound by the decisions in *Empire Equities*, *Santa Fe Development*, *G-N Partners* and *Future Growth*.  Nor does the Court find clear guidance from decisions by the Tenth Circuit on the specific question in this case whether § 108(b) extends an unexpired option to purchase property.

First, in *In re Trigg*, a case decided under the Bankruptcy Act of 1898 ("**Bankruptcy Act**") the Tenth Circuit concluded the bankruptcy court had no power to reinstate a debtor's ability to renew oil and gas leases which

---

[25] *In re Durability, Inc.*, 273 B.R. at 661-63.

[26] *Id*. at 662.

[27] *Id*.

[28] *Id*.

[29] *Id*.

[30] *Id*.

[31] *Id*. at 662-63.

[32] *Id*. at 663.

had lapsed postpetition by their own terms for nonpayment.[33]  In that case, the debtors were parties to oil and gas leases issued to them by the U.S. Bureau of Land Management and the state of Wyoming which granted the debtors the exclusive right to drill for oil and gas on the leased property.[34] In lieu of pursuing production, the debtors could retain the leases by paying advance rent.[35]  Absent production, failure to pay the advance rent on or before the anniversary date would automatically terminate the lease.[36]

After paying the annual advance rent for many years, the debtors experienced severe financial difficulties and filed a petition for bankruptcy under Chapter XI of the Bankruptcy Act on April 20, 1977.[37] The debtors' leases had anniversary dates of June 1, July 1, August 1 and September 1.[38]  Rather than make the annual advance rental payment to keep the June leases in effect, the debtors commenced an adversary proceeding on June 21 seeking an injunction against termination of the leases and contempt findings against the lessors for violating the automatic stay.[39]  The debtors also filed similar adversary complaints after the July 1, August 1 and September 1 anniversary dates had passed.[40]

The Tenth Circuit found the bankruptcy court had no authority to prevent termination or reinstate the leases.[41]  The court first noted a bankruptcy court's inherent authority to issue an injunction "permits a bankruptcy court, in proper circumstances, to restrain cancellation of a contract in order to preserve the continuation of the debtor's business."[42]  In *Trigg*, however, the debtors did not seek an injunction against termination of

---

[33] *In re Trigg*, 630 F.2d at 1373-75.

[34] *Id*. at 1371-72.

[35] *Id*. at 1372.

[36] *Id*.

[37] *Id*.

[38] *Id*.

[39] *Id*.

[40] *Id*.

[41] *Id*. at 1373.

[42] *Id*. (internal citations omitted).

the leases until the leases had lapsed by their own terms.[43]  The Tenth Circuit stated "[a] contract that provides for termination on the default of one party may terminate under ordinary principles of contract law even if the defaulting party has filed a petition under the Bankruptcy Act."[44]  The Tenth Circuit concluded the bankruptcy court was powerless to rewrite the terms of the leases to prevent the leases from lapsing due to the debtors' failure to make the annual rental payments.[45]

The court relied on a decision by the U.S. Court of Appeals for the First Circuit, *Good Hope Refineries, Inc. v. Benavides*, which concluded, in circumstances similar to those of *Trigg*, section 11(e) of the Bankruptcy Act did not permit a lessee an automatic extension of time to make delay rental payments to the lessor after the lease terminated for failure to pay.[46] Section 11(e) of the Bankruptcy Act, the predecessor to § 108(b), provided:

> Where, by any agreement, a period of limitation is fixed for instituting a suit or proceeding upon any claim, or for presenting or filing any claim, proof of claim, proof of loss, demand, notice, or the like, or where in any proceeding, judicial or otherwise, a period of limitation is fixed, either in such proceeding or by applicable Federal or State law, for taking any action, filing any claim or pleading, or doing any act, and where in any such case such period had not expired at the date of the filing of the petition in bankruptcy, the receiver or trustee of the bankrupt may, for the benefit of the estate, take any such action or do any such act, required of or permitted to the bankrupt, within a period of sixty days subsequent to the date of adjudication or within such further period as may be permitted by the agreement, or in the proceeding or by applicable Federal or State law, as the case may be.

In *Good Hope*, the lessee argued the statutory language allowing the trustee a period of 60 days to "take any . . . action or do any act" necessary to preserve the debtor's rights allowed the lessee to make the delay rental

---

[43] *In re Trigg*, 630 F.2d at 1373.

[44] *Id*. at 1374.

[45] *Id*.  Although *Trigg* was decided under the Bankruptcy Act, at least one bankruptcy court has concluded its holding remains valid under the Bankruptcy Code. *See In re B&K Hydraulic Co.*, 106 B.R. 131, 134 (Bankr. E.D. Mich. 1989).

[46] *Good Hope Refineries, Inc.*, 602 F.2d 998, 1001-03 (1st Cir. 1979).

payments within 60 days of the bankruptcy petition.[47]  Noting the parties in *Good Hope* agreed the tender of the delay rental payments within the 60-day period "may be fairly analogized to exercising an option to extend an option to purchase property," the First Circuit held it cannot "read section 11(e) as providing an automatic extension of an option contract for a period of up to 60 days from the date of adjudication."[48]

The First Circuit found the language of section 11(e) of the Bankruptcy Act only expanded consensual limitations – those created "by an agreement" – "if they involve 'the like' of presenting proof of claim, proof of loss, demand, or notice."[49]  The First Circuit refused to apply section 11(e) to extend option contracts, stating:

> [W] hen a trustee exercises his power under section 70(b), 11 U.S.C. § 110(b), to assume an executory contract, the trustee obtains only such contractual rights as the debtor had and assumes all burdens to which the debtor was subject. [*Schokbeton Indus. Inc. v. Schokbeton Products Corp.*, 466 F.2d 171, 175 (5th Cir. 1971]. If the debtor has committed, or the trustee commits, an incurable breach, the trustee has no continuing rights under the contract. *Cf. Matter of Gulfco Investment Corp.*, 520 F.2d 741 (10th Cir. 1975).  It would be anomalous indeed if section 11(e), a provision dealing mainly with suits and claims by the trustee, could be used to alter contractual rights substantially where time is of the essence and the debtor or the trustee has defaulted.  It would be even more anomalous if, in the case of an option contract, section 11(e) (which gives the trustee or debtor-in-possession 60 days to perfect certain rights of the debtor) allowed the trustee to procure a right that never existed and for which no consideration has ever been paid, i.e., the right to exercise an option long after its termination date.[50]

The First Circuit, in *dicta*, also rejected the argument § 108(b), replacing section 11(e) as part of the Bankruptcy Reform Act of 1978, should influence the court's reading of section 11(e) because it added to the various acts

---

[47] *Good Hope Refineries, Inc.*, 602 F.2d at 1001-02.

[48] *Id*. at 1002.

[49] *Id*.

[50] *Id*. at 1003.

permitted within the 60-day extended period a power to "cure a default."[51] According to the court, "[w]hen a debtor or a trustee fails to exercise or renew an option by paying the agreed price, there is no contractual 'default' to be cured. The rights that the debtor purchased for the price of the option have merely expired of their own terms. There is no obligation to exercise or extend such an option, and thus no default when further payment is not made."[52]

This Court reads *Trigg*, and its reliance on *Good Hope*, as limiting section 11(e) of the Bankruptcy Act to exclude option contracts from its application.  Although a bankruptcy court outside this district has concluded the "basic differences in syntax between section 11(e) and the current section 108" allow for a broader and less limited application of § 108(b) to option contracts,[53] the Tenth Circuit has not so held and its decision in *Trigg* has not been overruled.

Subsequent to *Trigg*, the Tenth Circuit, in an opinion in the *Durability* cases pre-dating Judge Michael's opinion, rejected the district court's conclusion § 108(b) did not extend the thirty-one day grace period during which the trustee could make a past-due payment.[54]  That portion of the Tenth Circuit's opinion did not deal with the *additional* offer made by the debtor's insurer subsequently addressed by Judge Michael, but instead dealt with the thirty-one day grace period for past-due premiums which, the Tenth Circuit concluded, had not expired when the involuntary petition was filed against the debtor.[55]  The Tenth Circuit noted "other courts have applied [§ 108(b)] to hold that if the grace period of an insurance contract has not expired at the time the bankruptcy commences, and under the contract the policy remains in force during the grace period if payment is made within the grace period, the trustee is given sixty days [under § 108(b)] to pay the premium and assume the contract."[56]

---

[51] *Good Hope Refineries, Inc.*, 602 F.2d at 1003.

[52] *Id.*

[53] *In re Santa Fe Development and Mortg. Corp.*, 16 B.R. at 167-68 (focusing on section 11(e)'s use of "or the like" and § 108(b)'s provision for "any other similar act").

[54] *Id.* at 558-59.

[55] *Id.*

[56] *Id.* at 558-59 (internal citations omitted).

In reaching its decision, the Tenth Circuit relied in part on its holding from another case, *Autoskill, Inc. v. National Educational Support Systems, Inc.*, in which the court held "§ 108(b)'s sweeping language 'includes the filing of a notice of appeal'" under Fed. R. Civ. P. 4.[57]   According to the Tenth Circuit, although § 108(b) does not expressly include notices of appeal, § 108(b) "includes a broad catchall extending the time in which a debtor or trustee may 'perform *any other similar act*' in addition to the steps listed."[58]   The court found "[f]iling of a notice of appeal is at least a 'similar act' with respect to two of the actions specified, filing a 'pleading' or a 'notice.'"[59]   In the absence of the court's not-overruled decision in *Trigg*, the Court believes *Durability* and *Autoskill* possibly could be interpreted in this Debtor's favor.

However, although the Tenth Circuit construed the "other similar act" provision as a broad catch-all, this Court believes interpretation of that phrase should not be without limitation.   Rather, just as the Tenth Circuit found filing a notice of appeal similar to filing a "pleading" or a "notice" – acts specifically listed in § 108(b) – whether some other act is a "similar act" under § 108(b) must be determined in light of the more specifically enumerated acts preceding it.

Webster's dictionary defines "similar" as "having characteristics in common: very much alike: comparable" and "alike in substance or essentials: corresponding."[60]   Under the ordinary usages of the term "similar" and of the other acts specified in § 108(b), it is a strain to say exercising an option to purchase real property, qualifies as "any other similar act" under that section of the Code.   As the Debtor concedes, exercising the purchase option granted under the Amended Agreement does not involve filing any pleading, demand, notice or proof of claim or loss, or any act "similar" to these specific acts.   Nor, as the Court discussed above, is the exercise of the purchase option curing a default or similar to curing a default.   Default implies a failure to meet a binding commitment.   The lapse or termination of the Debtor's option does not involve a default or failure to meet a contractual obligation, but rather the Debtor's choice or simple

---

[57] *Autoskill, Inc. v. National Educational Support Systems, Inc.*, 994 F.2d 1476, 1484 (10th Cir. 1993), *overruled by TW Telecom Holdings, Inc. v. Carolina Internet, Ltd.*, 661 F.3d 495 (10th Cir. 2011)).

[58] *Id*. (emphasis original) (citing *In re G-N Partners*, 48 B.R. at 467).

[59] *Id*.   In *dicta*, the Tenth Circuit discussed the terms "pleading" and "notice" have broad meanings. *Id*. at n. 5.

[60] *Similar*, <u>Webster's Third New International Dictionary</u> (2002).

inability to not proceed with the option.  Thus, there is no cure period which can be extended by § 108(b).

The Court does not believe the "any other similar act" catch-all provision is to be read so broadly as to expand § 108(b)'s application to acts, including the exercise of an expired purchase option, having no similarity to or commonality with those listed.  Absent clearer guidance from the Tenth Circuit or the Supreme Court, this Court does not see itself free to expand the language of § 108(b) to include acts, or "similar acts," beyond what Congress has written into the Code.

Lastly, the Court is not willing, or able, to re-write the terms of the Repurchase Agreement to give the Debtor greater rights under that document than it would have if it had not filed for bankruptcy.  The terms of the Repurchase Agreement, including the deadline to exercise the option and the provision expressly providing that time is of the essence, were negotiated and agreed upon by the parties.  The Repurchase Agreement governs the respective rights of the parties and the Debtor has no ability to now exercise the purchase option because the Repurchase Agreement terminated by its own terms.  Section 108(b) does not extend that right.

Accordingly, for the foregoing reasons,

IT IS HEREBY ORDERED the Debtor's Combined Motion to Approve: (1) Debtor's Purchase and Sale Agreement for the Commercial Real Estate Located at 1075 S. Yukon St. (Repurchase) as Amended; and (2) Postpetition Loans is DENIED.

Dated July 30, 2018

BY THE COURT:

Michael E. Romero, Chief Judge
United States Bankruptcy Court